UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Joe Hand Promotions, Inc., ) | |
| ) | C.A. No. 3:10-cv-00199-CMC |
| Plaintiff, ) | |
| ) | OPINION AND ORDER |
| vs. ) | ON MOTIONS FOR DAMAGES |
| ) | AND ENTRY OF JUDGMENT |
| The Precint Bar - DAXLAM, Ltd., d/b/a ) | |
| The Precint Bar, and Bey Rutherford, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on Plaintiff's motions for entry of default judgment and for a determination of damages. Dkt. Nos. 9, 10. These motions are granted and damages awarded in the amounts set forth below. Entry of judgment will, however, be delayed until Plaintiff files an election of remedies.

**LIABILITY**

Liability has been established by Defendants' default. *See* Dkt. No. 8 (Clerk of Court's entry of default entered March 18, 2010). The present motions were filed immediately after entry of default. *See* Dkt. Nos. 9, 10 (filed March 19, 2010). Nearly a month after entry of default and filing of the present motions, Defendants moved to dismiss or alternatively, for relief from the default. Dkt. No. 12 (filed April 15, 2010). After careful review of the record, the court concluded that Defendants had been properly served and that their decision to ignore the complaint was a calculated risk, not the result of excusable neglect or other circumstances justifying relief from default. Moreover, the default was attributable to Defendants themselves, not to some independent agent such as an attorney or registered agent for service of process. Based on these conclusions, the court denied both the motion to dismiss and alternative request for relief from default. *See* Dkt. No. 18

(docket text order denying motion to dismiss or alternative motion to set aside default and motion for reconsideration). The court reaffirmed these conclusions in response to Defendants' subsequent motion for reconsideration. Dkt. No. 19 (motion to reconsider); Dkt. No. 23 (docket text order denying motion for reconsideration).[1]

Collectively, the allegations of the complaint, which are deemed admitted by virtue of Defendants' default, establish that Defendants violated either or both 47 U.S.C. § 605 and 47 U.S.C. § 553 by exhibiting the *Ultimate Fighting Championship 72: "Victory": UFC 72 Jason MacDonald v. Rory Singer* ("the Fight") at a bar owned and operated by the Defendants. *E.g.*, Dkt. No. 1, Complaint ¶¶ 9-18 (Section 605 allegations), 19-23 (Section 553 allegations). These deemed-admitted allegations further establish that (1) Defendants' violation of Sections 605 and/or 553 was willful and for the purpose of direct or indirect commercial advantage or private financial gain (Complaint ¶ 14), and (2) that Defendants committed the tort of conversion through their actions in exhibiting the Fight.

**DAMAGES**

As liability has been established by virtue of the default, the only issues remaining for resolution are the amounts of damages, attorneys' fees and costs to be awarded for these wrongful acts. As to these issues, Plaintiff seeks statutory damages and an award of attorneys' fees and costs under Section 605 as well as actual damages for conversion.[2]

---

[1] In their various submissions to the court relating to the entry of default, Defendants have focused on the manner of service. At no point have they suggested that they have a meritorious defense or otherwise challenged the factual allegations of the complaint (*e.g.*, that they knowingly intercepted the signal for the program at issue and willfully exhibited it at a commercial facility).

[2] Although liability was established under both Sections 605 and 553 by virtue of Defendants' default, it would be inappropriate to enter judgment under both statutes. This is because

**Procedural Background.** As noted above, Defendants responded to the March 19, 2010 motion for entry of default judgment by filing a motion to dismiss or set aside default. *See* Dkt. No. 12. They did not, however, include any alternative response to Plaintiff's companion motion for a determination of damages or to the damages demand included within the motion for entry of default judgment. Neither did Defendants seek a delay in the deadline for such response. Despite these deficiencies, the court allowed Defendants a further opportunity to address the motion for damages by including a new deadline for response in the May 27, 2010 order which denied the motion to dismiss or set aside default. *See* Dkt. No. 18 (setting June 7, 2010, as deadline for responding to Plaintiff's motion for determination of damages). The order also advised the parties as follows: "The court anticipates ruling on the motion without a hearing." *Id.*

Rather than addressing the motion for damages, Defendants filed a motion to reconsider the denial of their motion to dismiss or, in the alternative for relief from default. *See* Dkt. No. 19 (filed June 4, 2010). As with Defendants' earlier motion, this motion neither included an alternative response to the motions for a determination of damages and entry of default judgment nor sought an extension of time for filing such a response. Again, however, the court afforded Defendants additional time to respond to Plaintiff's motions by including a new deadline in the order denying Defendants' motion for reconsideration. Dkt No. 23 (entered July 6, 2010). The court also, again, advised the parties that it "anticipate[d] ruling on the motion without a hearing." *Id.* Plaintiff has now filed a response to the motion for damages. Dkt. No. 26.

---

the two statutory schemes provide relief for the alternative means by which transmission of the Fight might have been obtained. Recognizing these concerns, Plaintiff has elected to proceed under Section 605 and, consequently, waives any right to recovery under Section 553.

3

**Arguments of the Parties.** The motions for default judgment and damages seek the following relief: (1) an award of statutory damages under 47 U.S.C § 605(e)(3)(C)(i)(II) in the amount of $10,000 as to each Defendant; (2) enhanced damages under 47 U.S.C § 605(e)(3)(C)(ii) of $100,000 (presumably collectively) due to the willful nature of the offense; (3) costs and attorneys' fees under 47 U.S.C § 605(e)(3)(B)(iii) in the amounts of of $1,030.97 and $2,590 respectively; and (4) actual damages in the amount of $875 (the fee which would have been charged for a license to show the Fight) for the conversion claim. Dkt. No. 9 at 3; Dkt. No. 10 at 1. The requests for damages are based, in part, on allegations contained in the complaint. In addition, Plaintiff submitted evidence that Defendants would have been charged $875 had they purchased a license to exhibit the program. Plaintiff also submitted affidavits in support of the amounts sought for fees and costs.

On July 14, 2010, Defendants filed a three page memorandum addressing the damages issues. That memorandum argued that no more than a minimal award of damages was appropriate because: (1) Plaintiff filed the action almost three years after the Fight was aired; (2) Plaintiff "has presented no evidence of losses . . . but relies solely on the statutory damages" available under Section 605; (3) this "lack of evidence" suggests the absence of extenuating circumstances supporting any award beyond the minimum allowed; (4) Defendants did not charge a cover charge or advertise the program; (5) the bar where the Fight was shown has a seating capacity of "only 110," "was struggling financially" at the time the program was shown, and "changed its name and format shortly thereafter." Dkt. No. 26 at 1-2. Defendants also filed a supporting affidavit which, in addition to the above points, states that a substantial award would be devastating to both Defendants. Based on these arguments, Defendants assert that the court should award no more than

4

$1,000, the statutory minimum, under 47 U.S.C § 605(e)(3)(C)(i)(II), enhanced by no more than an additional $1,000 under 47 U.S.C § 605(e)(3)(C)(ii) due to the willful nature of the offense. *Id.* Defendants do not address the amounts sought for attorneys' fees and costs. Neither do Defendants indicate any objection to the court's stated plan to resolve the matter based on written submissions.

On reply, Plaintiffs note that they did, in fact, submit evidence of damages in the form of the fee schedule which fully supports the claim for $875 in actual damages for conversion. Plaintiffs also note that there is no requirement for proof of actual damages to obtain a statutory damages award and that other courts, in similar circumstances, have awarded either a flat sum (such as $5,000) or a multiple based on seating capacity or the number of persons present as the base statutory award under 47 U.S.C § 605(e)(3)(C)(i)(II), and have considered multiple factors in determining the proper amount of enhanced damages under 47 U.S.C § 605(e)(3)(C)(ii), including the need for deterrence. Dkt. No. 28 at 4-5.

## DECISION OF THE COURT

**Section 605 – Statutory Damages.** The court declines to award any damages under 47 U.S.C. §§605(e)(3)(C)(i)(II) for the simple reason that this section is not mentioned in the complaint.[3] The inclusion of a demand under 47 U.S.C. §§605(e)(3)(C)(ii), however, largely moots this defect as the court concludes that a *total* award of $5,000 (collectively against the Defendants) is an appropriate total award of statutory damages.[4] In awarding this amount, the court has

---

[3] In this regard, the court acts *sua sponte*, as Defendants have only objected to the amount of the award sought under 47 U.S.C. §605(e)(3)(C)(i)(II). They have not challenged the propriety of the award.

[4] Had Plaintiff included a claim under 47 U.S.C. §605(e)(3)(C)(i)(II), the court would have awarded $2,500 under that section (roughly three times the license fee), and an additional $2,500 under 47 U.S.C. §§605(e)(3)(C)(ii) (doubling the award under subsection (i)). Thus, the total award

5

considered the amount which would have been charged had Defendants purchased a license to exhibit the Fight ($875), and the multiple and net amount necessary to ensure a deterrent effect as to an offense which was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." Although more may be justified, the court concludes that, under the circumstances presented here, a total award of between five and six times the license fee is a sufficient deterrent, at least when coupled with the additional deterrent effect of the attorneys' fees and costs awarded below.[5]

In declining to award a larger amount, the court has considered the absence of evidence of a number of factors which courts have found to favor a larger award. For example, there is no evidence that Defendants committed repeated violations over an extended period of time, imposed a cover charge, advertised the event, or obtained substantial revenue as a result of the improper exhibiting of the program. *See generally Kingvision Pay-Per-View, Ltd. v. Guiterrez*, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008) (listing these and other factors). On the other hand, there is evidence

---

would have been the same.

[5] In a recent case with similar allegations, the undersigned awarded $10,000 in damages. *See J&J Sports Productions, Inc. v. Guatemala Brothers, Inc. et al.*, C.A. No. 3:10cv852-CMC, Dkt. Nos. 15-16 (ruling and judgment). The license fee which should have been paid to display the event at issue in that action was $2,200. *Id.* at Dkt. No. 13-3. Thus, the award here is roughly proportionate to the award in *J&J Sports Productions,* although it has been increased somewhat based on the undersigned's determination that an award of less than $5,000 would not have an adequate deterrent effect. The underlying circumstances of the two actions are also similar. There, as here, Defendants allowed the matter to go into default, and opposed the award of damages primarily by arguing that a substantial award would be financially devastating due to Defendants' difficult financial circumstances. The court finds such arguments unpersuasive as they suggest that unlawful behavior may be excused, at least in part, based on a defendant's financial circumstances. Defendants here have, in any event, failed to offer any evidence of their financial circumstances beyond the individual Defendant's conclusory and self-serving affidavit. The court has, nonetheless, presumed Defendants to be of no more than modest means in determining the minimum award necessary for deterrence.

6

that Plaintiff suffered a direct injury of $875 (the license fee Defendants should have paid to exhibit the program), as well as substantial indirect injuries.[6]

For the reasons set forth above, the court awards $5,000 in statutory damages pursuant to 47 U.S.C. §§605(e)(3)(C)(ii) (authorizing awards of up to $100,000 if the cable theft was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain.").

**Section 605 – Attorneys' Fees and Costs.** Defendants have not opposed Plaintiff's request for an award of attorneys' fees of $2,590 and costs of $1,030.97 under 46 USC §605(e)(3)(B)(iii). The court, nonetheless, concludes that the amounts sought for work by paralegals and attorneys at the Law Offices of Thomas P. Riley, P.C. are not adequately supported. In particular, this firm purports to "blend" attorney rates of $300 with paralegal or administrative assistant time at the rate of $100 per hour to achieve a billable hourly rate of $400. This would more accurately be described as stacking, rather than blending, based on counsel's apparent presumption that every hour listed was accomplished by an attorney who required a corresponding hour of assistance from either a paralegal or administrative assistant. The court will assume without deciding that all such time (including time of administrative assistants) might be compensable if properly supported.[7] Here,

---

[6] Plaintiff has submitted evidence that it loses substantial revenues as a result of businesses exhibiting programs without payment of the appropriate license fee ("pirating"). Dkt. No. 9-3 at ¶¶ 11-12 (Affidavit of Joe Hand Jr.). Moreover, ferreting out this pirating is expensive, time consuming and difficult. These factors favor imposition of a higher penalty based on the loss to Plaintiff, even if there is no gain to Defendants.

[7] While the court makes this assumption for purposes of addressing this argument, it notes that the available authority suggests that administrative work is not compensable under fee-shifting statutes. *See generally Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (discussing billing of clerical tasks under 42 U.S.C. § 1988); *see also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (stating, in discussing billing of clerical tasks under the Equal Access to Justice Act, that "[w]hen clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). Plaintiff has not presented any authority which would suggest a different rule applies to Section 605's fee-shifting provisions.

7

however, there is no support for the presumption that one hour of paralegal or administrative time was worked for every hour of attorney time. Moreover, it appears that a number of the tasks performed by the Riley Firm might have been completed by a paralegal. There is, at the least, insufficient documentation to support a different conclusion. Under these circumstances, the court concludes that all time reported by the Riley Firm should be compensated at the paralegal rate of $100 per hour.[8] This reduces the compensable attorney's fee attributable to the Riley Firm from $1290 to $322.50 (a reduction of $967.50).

As to local counsel, the court notes the absence of independent support for the reasonableness of his rates. *See generally Grissom v. Mills Corp.*, 549 F.3d 313, 323 (4th Cir.2008)(reversing fee award, in part because "Plaintiff offered no specific evidence that the hourly rates sought for his attorneys coincided with the then prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work, which our case law required him to do." ); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."). The court's own knowledge of rates charged in litigation in this court is, however, sufficient to conclude that the rates sought are within the normal range for similar work in this geographic area. Lacking any challenge to the rates, the court will, in this instance, accept the current documentation as adequate

---

[8] As discussed below regarding local counsel's time, the Riley Firm has failed to provide adequate support for the rate claimed (whether $300 or $400 per hour). The court's reduction of the rate is, however, such that the maximum rate the court will allow is well below rates normally charged in the geographic area of this court. The court will, moreover, take judicial notice that the rates charged in the court's geographic area are generally lower than the rates charged in the area where the Riley Firm is located.

8

to support the hours and rates of local counsel.[9] The costs sought, likewise, appear reasonable and are not challenged. The court, therefore, awards a total of $1,622.50 in attorneys' fees ($2,590 less $967.50) and $1,030.97 in costs pursuant to 46 U.S.C. §605(e)(3)(B)(iii).

**Conversion.** The claim for actual damages for conversion is well supported and not challenged. The court, therefore, awards $875 on the conversion claim.

**Election of Remedies.** Plaintiff shall be required to elect between recovery on the statutory (Section 605) claim and the conversion claim within seven calendar days of entry of this order. Entry of judgment will be delayed until this election is filed.

## CONCLUSION

For the reasons set forth above, the court awards statutory damages in the amount of $5,000 for Defendants' violation of 47 U.S.C. § 605, together with attorneys' fees and costs of $ 2,653.47 for a total award of $7,653.47 for violation of Section 605. Alternatively, the court awards actual damages of $875 for conversion of Defendants' property rights in the pirated signal. Defendants are jointly and severally responsible for these damage awards. Plaintiff shall, however, be required to elect between the two remedies (statutory damages under Section 605 or actual damages for state law conversion). The election shall be made within seven calendar days of entry of this order. Judgment will be deferred until the election is made.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 23, 2010

---

[9] The court forewarns counsel, however, that he should strictly comply with the requirements of *Grissom* and *Plyler* in any future petitions for attorney's fees.